IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| LAWRENCE GILLIAM : | |
| 174 Fairview Avenue : | |
| Yeadon, PA 19050 : | |
|     *PLAINTIFF* : | |
| : | CIVIL ACTION NO: |
| v. : | |
| : | |
| CITY OF PHILADELPHIA : | JURY TRIAL DEMANDED |
| P/O THOMAS LICIARDELLO, No. 4383 ; | |
| LT ROBERT OTTO, No. 413 ; | |
| SGT JOSEPH McCLOSKEY, No. 331 : | |
| P/O MICHAEL SPICER, No. 5180 : | |
| P/O PERRY BETTS, No. 6761 : | |
| P/O JEFFREY WALKER, No. 3730 : | |
| P/O LINWOOD NORMAN, No. 5214 : | |
| 1515 ARCH STREET : | |
| PHILADELPHIA, PA 19102 : | |
|     *DEFENDANTS* : | |

_____

## **COMPLAINT**

1.     This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988. and the Fourth and Fourteenth Amendments to the United States Constitution, and under the common law of the Commonwealth of Pennsylvania, against City of Philadelphia Police Officers in their individual capacities and against the City of Philadelphia.  Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory provision.  Plaintiff further invokes the pendent jurisdiction of this Court, provided by 28 U.S.C. § 1367, to entertain claims arising under state law.

## PARTIES

2. Plaintiff LAWRENCE GILLIAM, at all times relevant to this Complaint, is and was a Unite States citizen, and the Commonwealth of Pennsylvania.

3. Defendant CITY OF PHILADELPHIA, at all times pertinent to this Complaint, is a municipality of the Commonwealth of Pennsylvania, and owns, operates, manages, directs and controls the Philadelphia Police Department, which employees the below-named police officers.

4. Defendants LICIARDELLO, OTTO, McCLOSKEY, REYNOLDS, SPICER, BETTS, NORMAN, and WALKER at all times pertinent to this complaint, were employed by the Philadelphia Police Department, acting under color of state law, pursuant to official policy, custom or practice of the City of Philadelphia and/or its Police Department.  They are being sued in their individual capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5. At the time of the incident that is the subject of this Complaint, Plaintiff Lawrence Gilliam was a 42-year-old male, with no criminal convictions.

6. On February 16, 2010, Plaintiff was arrested by Defendants and charged with, *inter alia,* possession with intent to distribute a controlled substance and conspiracy.

7. According to an affidavit of probable cause prepared by Defendant Liciardello:

> During the month of February 2010 P/O Liciardello #4383 and P/O Reynolds #4268 received information from a reliable source of information about a B/M named "Quincy" [Petitioner Quincy Thomas] and a B/M goes by the name "Speedy" [Lawrence Gilliam] who are selling large amounts of cocaine throughout West and Southwest sections of the City of Philadelphia.  The source states that Quincy resides at 6217 Stiles St., operates a dark color mini van PA #GJW-9305.  The source also states that both Speedy and Quincy are cowboys and wear cowboy attire.
>
> P/O Liciardello conducted a BMV check on the mini van PA # GJW-9305 which revealed the vehicle came back registered to a Quincy Thomas, 6217 Stiles St.

2

On 2/16/10 at approx 2:50 pm, P/O Liciardello and P/O Reynolds set up surveillance on 6217 Stiles St, at which time police observed parked in front of the location the mini van.

At approx 3:15 pm Police observed a B/M wearing cowboy attire later ID as Quincy Thomas exit 6217 Stiles lock the front door with a key and enter into the mini van.

Thomas was followed to the 100 blk of South St where he exited the vehicle and was observed entering a restaurant "Black Angus." Surveillance was maintained on the location from 3:45 pm to 7:00 pm. During this time period police would observe Thomas exit the location and smoke cigarettes with a B/M also wearing cowboy attire later ID as Lawrence Gilliam.

At approx 7:00 pm P/O Liciardello and P/O Reynolds observed Thomas, Gilliam and another unk B/M enter the mini van. The vehicle was followed by police to the 5100 blk of Girard Ave where the unk B/M exited the mini van. Thomas and Gilliam were followed to the 5800 blk of Race st where Gilliam exited the mini van and was observed by Sgt. McCloskey #331 and Lt. Otto #413 entering 5822 Race st using a key. Thomas left the area at which time he was followed to the Rite Aid located at 5th and Chestnut St where he was followed inside by P/O Norman #5214 and P/O Walker #3730.

Once inside the location P/O Norman and Walker observed Thomas purchase (2) bottles of inositol which is a cutting agent used to in the processing of cocaine. Thomas left the Rite Aid at which time he was followed back to 5822 Race st where he was observed entering 5822 Race st.

At approx 8:20 pm P/O Liciardello and P/O Reynolds observed Thomas exit 5822 race st and appeared to be holding something in his right jacket pocket. Thomas entered back into into [sic] the mini van and was stopped at 59th and Race st where Lt Otto observed Thomas place a large clear plastic bag containing large white chunks of alleged cocaine in his right pocket. Thomas was taken out of the car and Lt Otto recovered from his pocket (1) clear plastic bag containing cocaine (PNW=127 grams). Thomas was placed into custody and the cocaine was later handed over to P/O Liciardello and a Nik Test G was conducted with a positive result for the presence of cocaine.

P/O Liciardello and P/O Reynolds were maintaining surveillance on 5822 Race st at which time Police observed a B/M later ID as Dehaven Brown approach 5822 Race st. Brown at this time was standing on the steps looking in the direction of Thomas that was being placed into custody at 59th and Race. Brown at this time knocked on the door of 5822 Race st and the door was opened by Gilliam. Brown and Gilliam had a conversation and Gilliam looked in the direction of 59th and Race where Thomas was being placed into custody. Gilliam and Brown then entered into 5822 Race st.

3

> Based on the actions by Brown and Gilliam and the recovery of the cocaine from Thomas, Sgt McCloskey and Lt Otto made the determination to secure 5822 Race st so the further evidence would no [sic] be destroyed.
>
> Entry was made at which time Gilliam and Brown were observed running to the rear of 5822 Race st. Both males were placed into custody by P/O Spicer and P/O Betts. P/O Spicer observed on the kitchen counter (1) clear zip lock of cocaine and a digital scale with white residue. The location was secured for preparation of a search and seizure warrant.
>
> P/O Liciardello read Thomas his Miranda warning at which time Thomas agreed to cooperate with police and stated that there was additional cocaine and (2) firearms at his house of 6217 Stiles st.

8. Defendants allege that they recovered cocaine from Plaintiff's home as well as U.S. currency.

9. Plaintiff did not engage in any of the activity as alleged by Defendants.

10. Plaintiff possessed additional U.S. currency that was not placed on a property receipt and was never returned to Plaintiff.

11. Defendant Liciardello took Plaintiff into a back room where he assaulted him and kept telling Plaintiff that if he would get him a quantity of cocaine, he would not even be arrested on this case.

12. When Plaintiff advised that he did not know what Liciardello was talking about, Plaintiff was arrested.

13. As a result of the false allegations made by Defendants, Plaintiff was arrested and charged with possession with intent to distribute a controlled substance, to wit: cocaine.

14. Following his arrest, bail was set in an amount of $150,000.00 which was later reduced to $50,000 which was posted after Plaintiff spent approximately 10 days incarcerated.

15. On December 3, 2012, the Philadelphia District Attorney R. Seth Williams sent a letter to Philadelphia Police Commissioner Ramsey indicating that the District Attorney's Office

would no longer use certain Philadelphia narcotics officers, including Defendants Liciardello, Reynolds, Otto, Spicer and Betts, as witnesses, or accept charges or approve search warrants in cases in which these officers were involved.

16. On December 18, 2012, a Nolle prosequi was entered and the case was dismissed.

### COUNT I
### FEDERAL CAUSE OF ACTION: 42 U.S.C. § 1983
### PLAINTIFF v. ALL DEFENDANTS

17. Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

18. As a direct and proximate cause of the actions of Defendants, individually and jointly, Plaintiff suffered the following injury and damages:

   a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Pennsylvania; to be free in his person from unreasonable searches and seizures;

   b. Loss of his physical liberty;

   c. Loss of property;

   d. Physical pain and suffering and emotional trauma and suffering, some or all of which may be permanent.

19. Plaintiff claims damages under 42 U.S.C. § 1983, for the injuries set forth above against Defendants Betts, Hagins and Stubbs for their violation of the clearly established and well-settled federal constitutional rights of Plaintiff.

COUNT II
FEDERAL CAUSE OF ACTION: 42 U.S.C. § 1983
PLAINTIFF V. DEFENDANT CITY OF PHILADELPHIA

20. Plaintiff hereby incorporates the preceding paragraphs of this Complaint, as set forth above.

21. Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

    a. Unlawful detentions and unlawful arrests by police officers;

    b. The proper exercise of police powers, including but not limited to the use of false information to obtain search warrants, fabrication of evidence, unlawful arrest, malicious prosecution and unlawful detention;

    c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

    d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

    e. Police officers' use of their status as police officers to employ the use of unlawful arrest, or to achieve ends not reasonably related to their police duties;

    f. Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;

    g. The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as presented in this case;

    h. The refusal of police officers to intervene when other officers violate the rights of citizens in their presence;

    i. The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of many years as alleged in this Complaint; and

    j. The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

22. Defendant City of Philadelphia failed to properly train, supervise or discipline officers assigned to narcotics units of the Philadelphia Police Department who have engaged over a period of many years in systematic abuses of authority, including but not limited to:

    (a) the duty to provide only truthful information in securing search and arrest warrants;

    (b) the duty to ensure that relationships and dealings with confidential informants are in accord with Police Department policy and constitutional commands;

    (c) the duty to disclose exculpatory evidence in criminal cases;

    (d) their duty not to undertake arrests in the absence of lawful grounds;

    (e) the duty to provide accurate and truthful information to the prosecutor's office;

    (f) the duty to report and disclose misconduct and illegal actions of other police officers;

    (g) the improper execution of search warrants, and in particular prohibitions on searches that go beyond those authorized by the warrant, and/or involve the destruction or theft of property or evidence; and

    (h) the fabrication of evidence against an accused to justify their illegal actions and conduct.

23. Defendant City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of individuals by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia police, including the defendant officers in this case, to violate the rights of citizens such as plaintiffs.

24. Defendant City of Philadelphia is deliberately indifferent to the need to train, supervise and discipline police officers. The Internal Affairs Division (IAD) of the Philadelphia Police Department (PPD) fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

    a. There are excessive and chronic delays in resolving disciplinary complaints;

    b. There is a lack of consistent, rational and meaningful disciplinary and remedial actions;

  c.  There is a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct;

  d.  The PPD's internal investigatory process has fallen below accepted practices and is arbitrary and inconsistent;

  e.  The PPD discipline, as practiced, is incident based rather than progressive. Thus, repeat violators are not being penalized in proportion to the number of violations;

  f.  The conduct of IAD investigations demonstrates that PPD internal affairs personnel are not adequately trained and supervised in the proper conduct of such investigations;

  g.  A global analysis of IAD's investigatory procedures indicates a pattern of administrative conduct where the benefit of the doubt is given to the officer rather than the complainant;

  h.  There are serious deficiencies in the quality of IAD investigations and the validity of the IAD findings and conclusions;

  i.  The PPD lacks an effective early warning system to identify, track and monitor "problem" officers;

  j.  Despite the fact that several of the defendant officers had amassed an exceptionally large number of serious misconduct complaints, the officers stayed well below the radar of an early warning system;

  k.  Despite numerous prior complaints against several of the defendant officers, the PPD took no meaningful disciplinary or remedial actions;

  l.  Despite numerous prior complaints against several of the defendant officers, the PPD took no meaningful steps to more closely monitor, retrain and supervise the officers;

  m.  IAD frequently fails to interview available eyewitnesses to incidents involving citizen complaints of misconduct. The interviews that are conducted by IAD are below acceptable standards of police practice and fail to address key issues in the cases; and

  n.  IAD fails to acknowledge the disproportionate and extreme use of force used by police officers in the investigation of citizen complaints and fails to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

25. Defendants have by the above described actions deprived the plaintiff of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42

U.S.C. §1983. Defendant City of Philadelphia, as a matter of policy or practice, has, with deliberate indifference to the rights of its citizens, including Plaintiff, failed to:

    a.  adequately hire, discipline, train, supervise and/or otherwise direct its employees, including Defendants in this case, concerning the rights of citizens;

    b.  establish a system which properly identifies, reports and/or investigates instances of improper conduct by its employees, including Defendants in this case; and

    c.  adequately sanction and/or discipline its employees, including Defendants in this case, for violations of the rights of citizens;

hereby causing Defendants, in this case, to engage in the unlawful conduct described herein.

26. By these actions, Defendant City of Philadelphia has deprived Plaintiff of her rights secured by the United States Constitution in violation of 42 U.S.C. § 1983.

### COUNT III
### STATE CLAIM: MALICIOUS PROSECUTION
### PLAINTIFF V. ALL DEFENDANTS

27. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth herein at length.

28. By the conduct set forth above, Defendants Spicer, Betts, Reynolds, and Liciardello, individually and jointly, intentionally, recklessly, and maliciously caused a criminal prosecution to be initiated against Plaintiff.

29. Plaintiff was arrested and imprisoned and had to endure the prospect of going to trial in order to prove his innocence. Defendants acted with malice and furthered the prosecution of Plaintiff by providing false information, and/or withheld truthful information, all of which if known would have resulted in no prosecution of Plaintiff.

30. The criminal charges against Plaintiff were terminated in his favor following the dismissal of all charges.

31. As a direct and proximate result of the aforementioned conduct, Plaintiff suffered physical injury and pain, and continues to suffer emotional distress, humiliation, mental pain and anguish and such other and further losses as are established at trial.

### COUNT IV
### DAMAGES

32. Plaintiff hereby incorporates the preceding paragraphs of this Complaint as set forth above.

33. Plaintiff suffered losses including, but not limited to monetary and property loss.

34. The conduct of Defendants, individually and jointly, was outrageous, in that it was malicious, wanton, willful, or oppressive, or showed reckless indifference to the interests of Plaintiff, and therefore, warrants the imposition of punitive damages.

### RELIEF

**WHEREFORE**, Plaintiff Lawrence Gilliam requests the following relief:

a. compensatory damages;

b. punitive damages against the individually named defendants;

c. reasonable attorney fees and costs under Counts I and II; and

d. such other relief as appears reasonable and just.

e. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **James, Schwartz & Associates, P.C.**
        1500 Walnut Street – 21st Floor
        Philadelphia, PA 19107
        (215) 751–9865

By:   /S/    *Jonathan James*   JJJ6405
        JONATHAN J. JAMES, ESQUIRE
        Attorney I.D. #64534
        jjames@civilrightspa.com

        /S/    *Michael Schwartz* MCS6449
        MICHAEL C. SCHWARTZ
        Attorney I.D. #39475
        mschwartz@civilrightspa.com

        ATTORNEYS FOR PLAINTIFF

Date:   September 3, 2013